UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PARTECH, INC.,

          Plaintiff,

      v.                 5:03-CV-398

DECO SOLUTIONS GROUP, INC.,

          Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:             OF COUNSEL:

HANCOCK & ESTABROOK, L.L.P.     JANET D. CALLAHAN, ESQ.
Attorneys for Plaintiff
1500 MONY Tower I
Syracuse, New York 13221

THOMAS M. ROBERTSON, ESQ.
Attorney for Defendant
333 East Onondaga Street
Syracuse, New York 13202

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. BACKGROUND

   Plaintiff ParTech, Inc. ("ParTech") is a New York corporation in the business of developing, manufacturing, marketing, installing, and servicing point-of-sale ("POS") systems to the quick-service restaurant market. Defendant Deco Solutions Group, Inc. ("Deco") is a Florida corporation in the business of developing and customizing POS software for the quick-service restaurant market.[1]

---

[1] Federal jurisdiction in this case is based on diversity of citizenship. See 28 U.S.C. § 1332.

In 1997, ParTech and Deco entered into a written contract titled "Value-Added Reseller Agreement" ("VAR Agreement"). The essence of the VAR Agreement was that ParTech would manufacture and sell POS hardware to Deco, then Deco would install its software onto the hardware and remarket the final product to fast-food franchises. Specifically, § 6.1 of the VAR Agreement provided that ParTech would deliver and Deco would purchase and take delivery of a minimum of 1,000 units of ParTech computer hardware during each of the two twelve-month periods during which the VAR Agreement would be in effect. Sections 14.1 and 14.2 provided that Deco's failure to pay invoices when due and payable would constitute a default and that such a default would give ParTech the option of terminating the VAR Agreement and proceeding by lawful means to recover damages, as well as costs and attorney's fees. While the VAR Agreement was by its terms in effect for only two years, § 3.1 provided that it could be renewed for successive one-year terms upon the parties' execution of a renewal addendum.

At the end of the two-year period, the parties executed renewal addendums extending the VAR Agreement each year for the next three years. At some point after the end of the initial two-year period, Deco began defaulting on payments to ParTech. By October 2001, Deco owed $235,207.50 to ParTech under the VAR Agreement.

In an effort to resolve Deco's outstanding obligations and also maintain their business relationship, the parties entered into a second written contract titled "Distribution Agreement" on October 26, 2001. The Distribution Agreement reversed the roles of the parties, such that ParTech would purchase Deco's software, install the software onto its hardware, and then sell the final product.

Section 5.1 of the Distribution Agreement provides:

> DECO acknowledges that it is currently in arrears for payment to ParTech that includes charges related to a Value-Added Reseller Agreement dated July 29, 1997 totaling $235,207.5[0.] ParTech agrees to freeze all finance or interest charges associated with DECO's outstanding balance as of December 1, 2000. Licenses purchased by ParTech from DECO will be as in Schedule D which includes provisions for fees before and after DECO's satisfaction of the arrears stated above. The above number is the current DECO account balance as of this date excluding Orion 9-Star 180 term transactions and any outstanding credits that have not posted yet to the account.

(Pl.'s Mem. in Supp. Ex. 6 § 5.1.) As indicated by the language in § 5.1, Schedule D of the Distribution Agreement provides that ParTech would retain a certain amount of what it owed to Deco and apply it to Deco's debt from the VAR Agreement.

On November 6, 2001, the parties executed an addendum to the Distribution Agreement ("Addendum") which provides that:

> For the purpose of addressing limitations of liability in connection with the Distribution Agreement, the Parties agree as follows:
> 1. Limitation of Liability
>     1.1 In no event, whether in contract, tort (including negligence), strict liability, indemnity, warranty, or otherwise, shall either party be liable to the other for special, indirect, incidental or consequential damages, including, but not limited to, the loss of actual or anticipated revenue or profits.
>     1.2 Except for those obligations to pay Deco the fees specified in Schedule D pursuant to and in accordance with the terms of the distribution agreement in no event will either party be liable for any damages or expenses greater than $25,000.

Id. Ex. 6 Addendum (capitalization omitted).

According to Deco, on May 9, 2002, an accounting was presented to Richard DeCoursy, its president and co-CEO, by Jim Denton of ParTech showing that Deco owed ParTech $107,839.50. ParTech disputes this, but acknowledges that Deco paid the original debt ($235,207.50) down $14,012, and thus owes it $221,195.50.

- 3 -

In February 2003, ParTech filed this action against Deco in New York State Supreme Court claiming, among other things, that Deco breached its agreement to repay the full amount owed to ParTech under the VAR Agreement (<u>fourth</u> and <u>fifth</u> causes of action).[2] Deco removed the action to the United States District Court for the Northern District of New York.

ParTech now moves for summary judgment on its <u>fourth</u> and <u>fifth</u> causes of action under Federal Rule of Civil Procedure 56. Deco opposes and cross-moves for declaratory judgment/summary judgment on ParTech's <u>fourth</u> and <u>fifth</u> causes of action under Rule 57 and 28 U.S.C. § 2201. ParTech opposes. Oral argument was heard on August 10, 2007, in Utica, New York. Decision was reserved.

## II. DISCUSSION

Both parties move for summary judgment on ParTech's breach of contract causes of action (<u>fourth</u> and <u>fifth</u>). ParTech moves on the ground that Deco breached the VAR Agreement when it failed to pay ParTech as promised under that agreement. Deco moves on the ground that its debt to ParTech under the VAR Agreement was extinguished when the parties executed the Distribution Agreement and Addendum. It is undisputed that the VAR Agreement constituted a legally enforceable contract and that Deco breached the VAR Agreement by failing to pay ParTech as promised. Thus, the only issue here is whether

---

[2] ParTech also asserts causes of action for fraudulent misrepresentation (<u>first</u> and <u>third</u>), intentional concealment of facts (<u>second</u> and <u>third</u>), breach of the Distribution Agreement (<u>sixth</u>), failure to pay for goods and services (<u>seventh</u>), wrongful possession of property (<u>eighth</u>), and conversion (<u>ninth</u>). Deco asserts counterclaims for breach of the Distribution Agreement (<u>first</u>, <u>second</u>, <u>third</u>, <u>fourth</u>, <u>fifth</u>, <u>sixth</u>, <u>seventh</u>, <u>eighth</u>, <u>ninth</u>, <u>tenth</u>, <u>twelfth</u>, <u>thirteenth</u>, <u>fourteenth</u>, <u>fifteenth</u>, and <u>sixteenth</u>) and negligence (<u>eleventh</u>). These causes of action and counterclaims are unrelated to the pending motion and, therefore, will not be a part of the ensuing discussion.

Deco's debt under the VAR Agreement was indeed extinguished by the Distribution Agreement and Addendum.

Summary judgment is granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986); Silver v. City Univ. of New York, 947 F.2d 1021, 1022 (2d Cir. 1991). The court will not try issues of fact on a motion for summary judgment, rather it will determine "whether the evidence presents a sufficient disagreement to require submission to a [factfinder] or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995). A material fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510; R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 57 (2d Cir. 1997). In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986); Gibbs-Alfano v. Burton, 281 F.3d 12, 18 (2d Cir. 2002).

To be sure, contract interpretation is a legal matter to be resolved by the court.

Under Florida law,[3] "[e]very provision in a contract should be given meaning and effect and apparent inconsistencies reconciled if possible." U.S.B. Acquisition Co., Inc. v. Stamm, 660 So. 2d 1075, 1080 (Fla. Dist. Ct. App. 1995). "If clauses in a contract appear to be repugnant to each other, they must be given such an interpretation and construction as will reconcile them if possible." Id.

In this case, the Distribution Agreement contains provisions that appear to be repugnant to each other, namely § 5.1 and the Addendum. In § 5.1, the parties acknowledge that Deco owes ParTech $235,207.50 under the VAR Agreement. However, the Addendum provides that the parties' liabilities in connection with the Distribution Agreement shall not exceed $25,000.

Upon closer examination, however, it becomes clear that these provisions are not inconsistent with one another. The Addendum applies only to liabilities "in connection with the Distribution Agreement." (Pl.'s Mem. in Supp. Ex. 6 Addendum.) While Deco's debt to ParTech under the VAR Agreement is referenced in § 5.1 of the Distribution Agreement (as well as § 12.5), it arose out of and is therefore "in connection with" the VAR Agreement, not the Distribution Agreement. In light of the unambiguous statement of intent in § 5.1 – that Deco's debt under the VAR Agreement would not be extinguished as a result of the new agreement – and the absence of any reference to § 5.1, the VAR Agreement, or the $235,207.50 debt in the Addendum, it would be unreasonable to conclude that the parties intended to emasculate § 5.1 and extinguish the debt under the VAR Agreement by executing the Addendum. The only reasonable interpretation is that the parties executed the

---

[3] Section 20 of the Distribution Agreement provides that it shall be construed in accordance with the substantive laws of the State of Florida. (Pl.'s Mem. in Supp. Ex. 6 § 20.)

- 6 -

Addendum intending to limit liabilities going forward, not antecedent liabilities which arose out of the VAR Agreement. Thus, Deco's arguments that the parties intended to modify § 5.1 and create a substitution contract are not persuasive.

Since the Distribution Agreement and Addendum did not limit Deco's liabilities under the VAR Agreement, ParTech's motion for summary judgment will be granted and Deco's cross-motion for declaratory judgment/summary judgment will be denied.

Questions of fact remain, however, as to the amount Deco owes ParTech under the VAR Agreement. According to Deco, an accounting was presented to its president and co-CEO by Jim Denton of ParTech showing that Deco owes ParTech $107,839.50. ParTech claims that Deco owes it $221,195.50. Thus, while ParTech's motion will be granted, a trial is required to determine the amount of damages Deco owes to ParTech.

## III. CONCLUSION

Accordingly, it is

ORDERED that:

1. ParTech's motion for summary judgment on its _fourth_ and _fifth_ causes of action is GRANTED;

2. Deco's motion for declaratory judgment/summary judgment on ParTech's _fourth_ and _fifth_ causes of action is DENIED; and

3. The following issues/causes of action remain for trial:

    a. the issue of damages with respect to ParTech's _fourth_ and _fifth_ causes of action;

    b. all other causes of action asserted by ParTech; and

      c. all counterclaims asserted by Deco

IT IS SO ORDERED.

_____
United States District Judge

Dated: September 6, 2007
       Utica, New York.